For the reasons assigned, the judgment of the lower court is affirmed at plaintiff's cost.

## MUNCH v. NEW ORLEANS PUBLIC SERVICE, Inc.

### USNER v. SAME.

### Nos. 16379, 16380.

Court of Appeal of Louisiana. Orleans.

June 14, 1937.

John H. Hammel, Jr., of New Orleans, for appellants.

Ivy G. Kittredge, of New Orleans, for appellee.

WILKINSON, Judge Ad Hoc.

These two suits, consolidated for purpose of trial in the district court, were likewise heard together in this court.

Both suits grew out of a collision between an automobile and a street car. The automobile was being driven by Charles A. Usner, eighteen years of age; riding in it as passengers were Herbert P. Munch, seventeen years, and Warren W. Munch, fifteen years.

The plaintiff in one action, Usner, brought suit to recover damages for injuries alleged to have resulted to his minor son; and Munch, plaintiff in the other action, likewise brought suit to recover damages on behalf of his minor sons for injuries claimed to have been suffered in the accident by them. Both fathers also claimed items of expense to themselves said to have been caused them by medical attention to and other expenses of the sons following the accident.

Both suits were brought against the New Orleans Public Service, Inc., as the corporation owning and operating the street car involved in the collision. The petitions in each instance were filed by same counsel, and except as to details relating to the two different families and differences in the damages claimed, are practically identical.

The petitions, read jointly, contend that on May 23, 1934, at about 6:30 o'clock p. m., young Usner was driving a Chevrolet roadster, and sitting on the seat next to him, as his passengers and guests, were Herbert and Warren Munch; that the automobile was being driven down the riverside of S. Claiborne avenue in the city of New Orleans in the direction of Canal street; that at Clio street the tracks of the S. Claiborne line for street cars going in the uptown direction of New Orleans turn into S. Claiborne avenue, and enter the neutral ground thereof at about 58 feet from the river curb of the neutral ground; that the river uptown corner of S. Claiborne avenue and Clio street is a blind corner, improvements being built up to the property line; and that in Clio street, as a warning to traffic about to enter Claiborne avenue, there is a municipal "stop" sign.

There are further allegations describing the intersection more in detail and also contending that Claiborne avenue at this point is a right a way street, a boulevard, and a state highway.

The petitions go on to allege that the automobile was being driven at a rate of speed of about 25 miles an hour, and that as it reached a point which, the petitioners believed, was about 30 or 35 feet from Clio street, S. Claiborne line street car No. 826, without stopping at the corner, came out into the intersection at a rapid rate of speed, believed to have been at least 15 miles an hour, and came directly in the path of the automobile, giving no notice by ringing of bell or otherwise; that the driver of the automobile, recognizing the danger, applied his brakes and endeavored to steer the automobile towards the neutral ground, but, notwithstanding his efforts, the left front of the street car came in contact with the right front side of the automobile, caus-

ing the damages and injuries thereafter complained of.

We gather from the whole of the petitions that the following elements of negligence were charged to the motorman of the street car:

(1) Excessive speed of the street car; (2) failing to stop before entering Claiborne avenue; and (3) failing to exercise a proper lookout in order to avoid colliding with the on-coming Usner automobile.

The defendant, New Orleans Public Service, Inc., categorically denied in its answer all of the foregoing elements of negligence and specifically alleged that the street car motorman complied with the traffic "stop" sign at the intersection, and, as a matter of fact, actually stopped at that corner and discharged a passenger; that after so doing, the motorman started his car across the river roadway of S. Claiborne avenue, at which time he looked up the avenue for approaching traffic and observed the Usner automobile about a block away, coming toward downtown at a "fairly fast" rate of speed; and as the street car was at that time slowly crossing over the intersection, in plain view of the driver of the approaching automobile, the motorman continued the progress of his car until its front end reached at or slightly past the riverside curb of the neutral ground of Claiborne avenue; that the motorman then noticed that the automobile was not slackening its speed but, on the contrary, the driver began to swerve toward the left, causing it to run into the left side of the street car near the front end, striking a glancing blow, and both vehicles coming to a stop a very short distance beyond the riverside curb of the neutral ground.

The defendant corporation pleaded that the collision was caused solely by the fault of the motorist in speeding and in failing to slacken his speed or stop his automobile and thus avoid the impact; and defendant also pleaded, in the alternative, that if the motorman of the street car was found to be guilty of any negligence, the contributory negligence of the driver and occupants of the automobile would bar recovery by the plaintiffs.

The trial of the case, we understand, lasted for six days. The three young occupants of the automobile were the principal witnesses for the plaintiffs, and plaintiffs endeavored to support their testimony by that of several residents of the neighborhood and one passenger in the street car who answered an advertisement for witnesses, all of these being colored persons. On behalf of the defendant the motorman and conductor and several passengers in the street car were placed on the witness stand. The testimony of all of these witnesses makes up a record of approximately 600 typewritten pages which we have read laboriously and carefully, but in which we have found no manifest error in the conclusion reached by our learned brother in the district court, who saw and heard all of these witnesses, and who rejected the demands of the plaintiffs.

The trial judge found, in his written reasons for judgment, and we are also satisfied from the whole of the evidence, that the motorman brought his car to a full stop in Clio street at or about the property line of the riverside of Claiborne avenue, and to that extent complied with all requirements of the muncipal "stop" sign regulations and of common prudence. Moving his large and ponderous vehicle from a standstill position at that point, the motorman manifestly could not have attained a sufficiently great rate of speed to have endangered closely approaching automobile traffic in Claiborne avenue as the street car emerged from behind the building at that corner; and it is ordinary horse sense to say that the emerging street car was large enough and sufficiently prominent in appearance to have readily been observed, and accordingly avoided, by any automobile drivers at a greater distance.

It was daylight at the time of the accident, and, since the impact between the two vehicles was undoubtedly at the lakeside of the riverside roadway of Claiborne avenue, the street car necessarily moved across approximately 40 feet, the total distance of the sidewalk and roadway, after it came from behind the corner.

Moving from a standstill to even the maximum speed that the plaintiffs attribute to the street car, 15 miles per hour, it would have taken the street car a period of time to traverse this 40 feet in which the Usner automobile, which the plaintiffs say was moving 25 miles per hour, would have come at least a half block down Claiborne avenue.

From this physical analysis, it is logical to believe, with all allowances for an inevitable interest in the outcome of the case, that Hudson, the motorman, is fairly accurate when he testified that he first saw

the Usner automobile about three-fourths of a block away when the street car was in motion at the Claiborne avenue sidewalk.

It is equally difficult to believe that Usner, the driver of the automobile, could have been keeping a proper lookout, and still have failed to see the street car moving across Claiborne avenue in front of him until his automobile, as he testifies, was about 30 to 35 feet from Clio street.

From the evidence of young Usner and the Munch boys, on the one side, and Hudson, the motorman, on the other side, we are convinced that when Hudson moved his street car into Claiborne avenue, he observed the Usner automobile at a sufficient distance away to justify his continuing his course, which was necessarily that of a comparatively slow and ponderous vehicle moving on fixed rails. We are also convinced that Usner had equal or greater opportunity to have observed the movement of the street car, and, had he done so, could readily have altered his speed or even stopped his comparatively light vehicle, which, unlike the street car, could readily change its course. The conclusion is inescapable that Usner and his companions in the roadster must have been inattentive to the movement of the street car, perhaps just long enough to bring the automobile in such proximity that Usner's only resort at the last moment was to try to swerve to the left, resulting in the glancing impact of the two vehicles.

We cannot agree with the ultimate argument in behalf of plaintiffs that, having once observed the approaching automobile, at a considerable distance, there was a duty on the part of the motorman of the street car to stop, or otherwise conduct his progress to insure the safe passage of the automobile. If such a burden were placed upon a motorman of a street car, where the tracks emerge across a heavy traffic artery, it might well be that, after having brought his car to a standstill, he needs must wait endlessly until the time came when no approaching automobile in the stream of traffic would be within half a block of that corner. We think the motorman in such a situation fairly has the right to assume that approaching motorists, once the street car begins to enter the intersection, will yield it fair opportunity to pass.

We do not find any of the cases referred to in the able brief of counsel for plaintiffs to be entirely in point, or fairly comparable to the facts in the case at bar.

Our conclusion is that there was no negligence on the part of the employee of the defendant corporation, but that, on the contrary, the collision, and the resultant injuries, were solely the result of the negligence of young Usner in not timely observing the passage of the street car across Claiborne avenue, and accordingly failing to avoid driving his automobile against the same.

The judgment of the lower court is affirmed.

Affirmed.

WESTERFIELD, J., absent.